1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESSE G. COOPER, in his Personal
Capacity and as Personal Representative of
the Estate of PAULA LEE JEFFERSON,
deceased, et al.,

            Plaintiff(s),

    v.

WHATCOM COUNTY, a political
subdivision of the State of Washington, et
al.,

            Defendant(s).

CASE NO. 2:20-cv-01196-TL

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

This matter is before the Court on the following motions:

- Defendant PeaceHealth's Motion for Summary Judgment (Dkt. No. 104);

- Plaintiffs' Motion for Partial Summary Judgment Re: Defendant Whatcom County's
  Affirmative Defenses (Dkt. No. 109);

- Plaintiffs' Motion for Partial Summary Judgment Re: Medical Contractors'
  Affirmative Defenses (Dkt. No. 131);

- Whatcom County Defendants' Motion for Partial Summary Judgment (Dkt. No. 134); and

- Motion for Summary Judgment from Defendants Kristine Glasgow, Sally Andrews, and Krista Robinson (Dkt. No. 146).

Having considered the relevant record and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court hereby GRANTS IN PART and DENIES IN PART the Parties' respective motions for summary judgment.

## I.    BACKGROUND

This case arises from the death of Paula Jefferson on August 10, 2017, while being held in pretrial custody at the Whatcom County jail. Plaintiffs, who are Ms. Jefferson's children, filed this suit on behalf of themselves and Ms. Jefferson's estate, raising both federal civil rights and state tort claims against several parties they believe contributed to Ms. Jefferson's death or, at least, allowed Ms. Jefferson to die while in custody. The Parties dispute many of the factual details and their relevance to this case, but the sequence of events surrounding Ms. Jefferson's death appears to be generally uncontested. The undisputed facts regarding those events follow.

### A.    Sequence of Relevant Events

On August 9, 2017, Ms. Jefferson was arrested by tribal police and brought to the Whatcom County jail for booking. Because Ms. Jefferson was visibly intoxicated at the time, jail staff would not accept her for booking without medical clearance (a "fit-for-jail evaluation"). She was then taken to PeaceHealth's St. Joseph Medical Center where Dr. Ralph Weiche conducted a physical examination and noted her medical history, which included alcoholism, alcoholic cirrhosis of liver, hepatitis C, IV drug abuse, and hypertension. He then diagnosed Ms. Jefferson with alcohol intoxication, uncomplicated. Dr. Weiche completed the fit-for-jail form, as requested by the Whatcom County jail. On the form, Dr. Weiche indicated Ms. Jefferson's

alcohol intoxication and high risk for withdrawal. Ms. Jefferson was then discharged to jail with Dr. Weiche's recommendation that the jail take withdrawal precautions and instruction that she be returned to the emergency room if her symptoms worsened.

Upon returning to the jail, Ms. Jefferson was processed through booking, which included a medical screening questionnaire. Ms. Jefferson's responses to the questionnaire and her discharge paperwork from the medical center were left for the jail's medical staff to review, and Ms. Jefferson was placed in general population. One of the jail's on-duty nurses, Krista Robinson, was informed by corrections officers of Ms. Jefferson's booking and made the decision for Ms. Jefferson to be rehoused in a cell on the first floor near the central booking area that includes dedicated nursing staff during the day. The jail does not employ any overnight medical staff. Ms. Jefferson was also provided Gatorade to encourage hydration.

Overnight, Ms. Jefferson was observed by and interacted with several corrections officers. At one point, Mr. Jefferson was observed vomiting and requested a change of clothes because she had soiled herself. Otherwise, jail staff who observed her during this time routinely reported that Ms. Jefferson was responsive and coherent.

The morning of August 10, Ms. Jefferson began asking to see a nurse and was informed that the jail medical staff are usually available starting around 7:30 a.m. At around 8:00 a.m., Ms. Jefferson was reevaluated by nurse Krista Robinson, who observed signs of withdrawal. Nurse Robinson then consulted the jail's contracted, part-time, on-call doctor, Dr. Stuart Andrews, who ordered increased hydration and prescribed Ativan to treat the effects of Ms. Jefferson's alcohol detoxification. Nurse Robinson administered the first dose of Ativan at about 9:40 a.m., with a second dose scheduled to be administered at noon. Shortly after receiving her first Ativan dose, Ms. Jefferson again began asking to see a nurse. Nurse Robinson

responded by observing Ms. Jefferson and noting that Ms. Jefferson visually appeared to be improving.

There is no record of anyone directly interacting with Ms. Jefferson after 10:35 a.m. Ms. Jefferson was eventually found to be unresponsive in her cell at 12:20 p.m. Jail staff were unable to resuscitate her despite administering CPR. Although the Parties dispute the precise cause of Ms. Jefferson's death, an autopsy report later revealed that she likely had methadone in her system when she died.

**B.      Procedural History**

Plaintiffs' Amended Complaint, *i.e.*, the operative complaint, was filed on August 26, 2021. Dkt. No. 82. Plaintiffs allege that Ms. Jefferson's federal civil rights were violated and that her death was negligently caused by three organizations and their employees who interacted with Ms. Jefferson after her arrest on August 9, 2017. *Id.* Defendants are PeaceHealth, the Northwest Regional Council ("NWRC"), and Whatcom County, along with several related individual defendants in their personal capacities.[1] *Id.*

**1.      PeaceHealth[2]**

PeaceHealth operates PeaceHealth St. Joseph Medical Center. Plaintiffs raise civil rights claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), as well as claims for general negligence, gross negligence, medical negligence, and corporate negligence related to PeaceHealth's involvement in Ms. Jefferson's fit-for-jail examination at the St. Joseph Medical Center on August 9, 2017. Dkt. No. 82.

---

[1] Plaintiffs also raise claims against several "Doe" Defendants. *See* Dkt. No. 82. None of the present motions address these fictitious Defendants. See *infra* § III.F. for the Court's discussion of the Doe Defendants.

[2] Plaintiffs separately filed claims against Dr. Weiche in his personal capacity (*see* Dkt. No. 82), but all claims against Dr. Weiche were dismissed by the Parties' stipulation before the filing of any motions for summary judgment (*see* Dkt. No. 103).

PeaceHealth moves for summary judgment on all claims and requests oral argument. Dkt. No. 104. Plaintiffs filed a response (Dkt. No. 117), and PeaceHealth replied (Dkt. No. 119). The Court has reviewed the Parties' briefing, supporting documents, and the relevant record, and finds oral argument unnecessary. *See* LCR 7(b)(4).

### 2.   Northwest Regional Council and Related Individual Defendants

NWRC contracts with Whatcom County and three other Washington counties to provide medical staff and services at local correctional facilities.[3] Medical personnel who work at the Whatcom County jail are subcontracted employees of NWRC, including individual Defendants on-site nurse Krista Robinson, Nursing Supervisor Sally Andrews, and Operations Director/Jail Health Administrator Kristine Glasgow (collectively, "the NWRC Individual Defendants"). Dkt. No. 146 at 2–8.

Plaintiffs' original Complaint included individual claims under 42 U.S.C. § 1983 against the NWRC Individual Defendants in their personal or supervisory capacities, municipal liability claims under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) against NWRC and its policymakers, and civil rights claims against NWRC under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), as well as claims for general negligence, gross negligence, medical negligence, and corporate negligence against "Whatcom County and its subcontractors," which appears to include NWRC and its individual defendants. NWRC, Ms. Andrews, and Ms. Glasgow moved to dismiss all claims. Dkt. Nos. 39–41. The Honorable Judge Coughenour denied the individual defendants' motions but granted NWRC's motion to dismiss and dismissed the organization without prejudice. Dkt. No. 57. Plaintiffs then filed their Amended Complaint. Dkt. No. 82.

---

[3] NWRC is organized under an interlocal agreement between Whatcom County, Island County, San Juan County, and Skagit County pursuant to Washington's Interlocal Cooperation Act. *See* RCW 39.34 *et seq.*

The NWRC Individual Defendants each filed an Answer to Plaintiffs' Amended Complaint raising several affirmative defenses, including: (1) failure to state a claim, (2) qualified immunity, (3) the public duty doctrine and good faith immunity, (4) comparative fault, (5) failure to mitigate damages, (6) statute of limitation, (7) third-party fault, and statutory bars to tort liability when the victim's injury or death was proximately caused by (8) their own drug or alcohol intoxication (RCW 5.40.060), or (9) their commission of a felony (RCW 4.24.420). Dkt. Nos. 96–98. Plaintiffs now move for partial summary judgment seeking dismissal of all nine defenses. Dkt. No. 131. The NWRC Individual Defendants responded to Plaintiffs' motion and requested oral argument (Dkt. No. 149), and Plaintiffs have replied (Dkt. No. 152).

Additionally, the NWRC Individual Defendants move for summary judgment on all of Plaintiffs' claims against them and request oral argument. Dkt. No. 146. Plaintiffs have responded (Dkt. No. 155), and the NWRC Individual Defendants have replied (Dkt. No. 159).

The Court has reviewed the Parties' briefing, supporting documents, and the relevant record, and finds oral argument unnecessary. *See* LCR 7(b)(4).

### 3.   Whatcom County and Related Individual Defendants

Whatcom County is responsible for operating the Whatcom County jail where Ms. Jefferson died. Correctional staff who directly interacted with Ms. Jefferson at the jail were Whatcom County employees, including the following individually named defendants[4]:

- Deputy Cheryl Cardinal,
- Deputy Matthew Turner,

---

[4] The Court does not consider the Amended Complaint's allegations against Deputy Adam Miller because he has been dismissed from this case with prejudice by the Parties' stipulation. *See* Dkt. No. 78.

- Deputy Jason McDonald,

- Deputy Matthew Charroin,

- Deputy Tim Kiele,

- Deputy Jeffery Hindman,

- Deputy Violet Ignashova,

- Deputy Miriah Brown, and

- Deputy Joshua Farmer (collectively "Whatcom County Deputies").

Dkt No. 82 ¶¶ 17–21, 23–26. The following Whatcom County employees have also been named as individual defendants in their capacities as supervisors and policymakers:

- Chief Deputy Wendy Jones,

- Lieutenant Caleb Erickson, and

- Whatcom County Sheriff Bill Elfo (collectively, "Whatcom Supervisors").

*Id.* ¶¶ 10–12.

Whatcom County also privately contracts with Dr. Stuart Andrews to provide part-time medical services as a jailhouse doctor. Dr Andrews is named as an individual defendant in his personal capacity as a supervisor of on-site jail medical staff, as well as a Whatcom policymaker. Dkt. No. 82 ¶ 13.

Plaintiffs claim that Whatcom County is liable for violating Ms. Jefferson's civil rights under § 1983 and *Monell*. Dkt. No. 82 ¶¶ 168–182. Plaintiffs also allege each of the Whatcom Deputies, Whatcom Supervisors, and Dr. Andrews are individually liable in their personal or supervisory capacities under § 1983. *Id.* ¶¶ 193–202. They also raise discrimination claims under the ADA and RA against the County. *Id.* ¶¶ 203–216. Finally, Plaintiffs raise claims of negligence, medical negligence, gross negligence, and corporate negligence against "Whatcom

County and its subcontractors" (*id.* ¶¶ 147–161), which Plaintiffs appear to define as including Whatcom County, named individual Whatcom employees, Dr. Andrews, and the NWRC Individual Defendants (as noted above). *Id.* ¶¶ 6–26.

In Answer to Plaintiffs' claims, Whatcom County and its related individual defendants, including Dr. Andrews (collectively "Whatcom Defendants"), assert the following affirmative defenses: (1) failure to state a claim, (2) qualified immunity, (3) the public duty doctrine and good faith immunity, (4) comparative fault, (5) failure to mitigate damages, (6) failure to exhaust administrative remedies, (7) third-party fault, (8) sovereign immunity, and statutory bars to tort liability when the victim's injury or death was proximately caused by (9) their own drug or alcohol intoxication (RCW 5.40.060) or (10) the commission of a felony (RCW 4.24.420). Dkt. No. 94 at 21–22. Plaintiffs now move for partial summary judgment seeking dismissal of several of these defenses. Dkt. No. 109. The Whatcom Defendants responded to Plaintiffs' motion (Dkt. No. 122), and Plaintiffs have replied (Dkt. No. 125).

Additionally, the Whatcom Defendants move for partial summary judgment on all of Plaintiffs' federal claims against them. Dkt. No. 134. Plaintiffs have responded (Dkt. No. 155), and the Whatcom Defendants have replied (Dkt. No. 157).

Oral argument was not requested by any of the Parties regarding any of the Whatcom County related motions for summary judgment. Upon review of the Parties' briefing, supporting documents, and the relevant record, the Court also finds oral argument unnecessary. *See* LCR 7(b)(4).

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh

the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. A material fact is one that "might affect the outcome of the suit under the governing law." *Id*. at 248. A genuine triable issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Additionally, "all justifiable inferences" must be drawn in the non-movant's favor, *id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), such that summary judgment must be denied if "the facts specifically averred by that party contradict facts specifically averred by the movant." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Once the movant has made such a showing, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [it] must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577–78 (1986) (internal citation omitted); *accord Ricci v. DeStefano*, 447 U.S. 557, 586 (2009). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.   DISCUSSION

Plaintiffs move to dismiss some of the various defendants' affirmative defenses, while each group of defendants separately move for summary judgment on most of Plaintiffs' claims.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). To survive summary judgment, each nonmovant must raise a genuine dispute of fact, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed'l Prac. & Proc. § 2720 (3d ed. 1998); *accord Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015). The Court will therefore rule on each motion separately. *See Riverside Two*, 249 F.3d at 1136.

### A. Plaintiffs' Motion for Partial Summary Judgment on the Individual Medical Contractors' Affirmative Defenses (Dkt. No. 131)

Plaintiffs move to dismiss on summary judgment all affirmative defenses raised by the NWRC Individual Defendants, and one defense raised by Dr. Andrews, in their respective Answers to the Amended Complaint. Dkt. No. 131; *see also* Dkt. Nos. 94, 96–98.

As a preliminary matter, the NWRC Individual Defendants ask the Court to take judicial notice of the Interlocal Agreement between Island, San Juan, Skagit, and Whatcom Counties (*see* Dkt. No. 147–16) pursuant to RCW 39.34, the Interlocal Corporation Act. Dkt. No. 149 at 6. Plaintiffs do not oppose this request and, in fact, reference the Interlocal Agreement in their reply in support of their summary judgment motion. Dkt. No. 152 at 4. Therefore, the Court will take judicial notice of the document, which is a public record maintained by the Washington Secretary of State's office. Fed. R. Evid. 201(b), (c); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute").

### 1.   The NWRC Individual Defendants' Affirmative Defenses

Plaintiffs challenge all nine defenses asserted by the NWRC Individual Defendants. *Id.* at 10–16.

#### a)   First Affirmative Defense: Failure to State a Claim

Plaintiffs argue that failure to state a claim is not an appropriate affirmative defense. *Id.* at 10–11 (citing *Zivkovic v. S. Cal. Edison*, 302 F.3d 1080, 1088 (9th Cir. 2002)). The NWRC Individual Defendants concede that "[i]n light of discovery produced and taken in this matter" this defense should be dismissed. Dkt. No. 149 at 8. Plaintiffs' request for summary judgment is therefore GRANTED as to this affirmative defense.

#### b)   Second Affirmative Defense: Qualified Immunity

Plaintiffs argue that the NWRC Individual Defendants are precluded by *Richardson v. McKnight*, 521 U.S. 399, 410 (1997), and its progeny, from asserting qualified immunity because they are private medical contractors who are employed by a commercial non-governmental entity. Dkt. No. 131 at 11–13. Defendants counter that NWRC is an association of local governments working cooperatively under an interlocal agreement authorized by Washington's Interlocal Cooperation Act, RCW 39.34 *et seq.*, and the NWRC Individual Defendants are therefore employed by a qualified government entity and not a private organization. Dkt. No. 149 at 6–10.

Plaintiffs' arguments turn on whether the NWRC Individual Defendants are privately-employed "medical provider[s] that have never been afforded qualified immunity." Dkt. No. 152 at 3 (citing cases denying qualified immunity to purely *private* medical contractors). While Plaintiffs "readily admit that 'NWRC is *not* a for-profit corporation'" (Dkt. No. 152 at 2 (emphasis original)), they assert that the NWRC Individual Defendants are "private

1   professionals contracted to provide medical services" and that NWRC "operates in the system of

2   private medical care, not a system that is responsible through elected officials to voters." Dkt.

3   No. 131 at 13. In support of this argument, Plaintiffs point to the contract between NWRC and

4   Whatcom County that states NWRC employees are not entitled to any benefits, rights, or

5   privileges afforded to county employees. *Id.* at 5. Plaintiffs also claim that "NWRC is a 'firm

6   providing medical care potentially in competition with other firms' to which the doctrine of

7   qualified immunity does not apply." *Id.* at 13.

8         First, Plaintiffs provide no evidence supporting their assertion that there is potential

9   competition with other firms. To the contrary, NWRC was formed pursuant to an act that

10  "permit[s] local governmental units to make the most efficient use of their powers by enabling

11  them to cooperate with other localities . . . to provide services . . . in a manner and pursuant to

12  forms of governmental organization that will accord best with geographic, economic, population

13  and other factors influencing the needs and development of local communities."

14  RCW 39.34.010; *see also* Dkt. No. 147-16 at 6 (declaring in the Interlocal Agreement that "[t]he

15  Counties participating as members of this Council have agreed that there is a mutual interest in

16  working together to facilitate joint attention to and action on matters of common concern."). This

17  suggests that NWRC is the only entity providing certain services to the member counties under

18  the agreement.

19        Second, it is undisputed that NWRC is a regional agency formed by an association of

20  local governments, the Interlocal Agreement was ratified by each participating county's

21  legislative body, and NWRC is governed by a board of directors composed of two elected

22  officials from each member county—making it accountable to voters of each participating

23  jurisdiction through its elected officials. *Id.*

24

Third, NWRC employees are provided health benefits through the Public Employee Benefits Board and participate in the state-run retirement benefits through the Washington Public Employees Retirement System. Dkt. No. 149 at 6–8 (citations omitted). This combination of facts suggests that, at a minimum, NWRC is a quasi-governmental entity.

Defendants have raised a material dispute of fact as to the private versus public nature of the NWRC Individual Defendants' employment status. The Court therefore DENIES Plaintiffs' request for summary judgment as to this affirmative defense. The Court discusses whether qualified immunity is available and applies in Section III.D.1.a. of this Order.

c)   ***Third, Fourth, Seventh, Eighth, and Ninth Affirmative Defenses: Common Law and Statutory Defenses to Tort Liability***

Plaintiffs state that they "have only asserted a single claim against the[ ] Medical Contractors – 42 U.S.C. § 1983" (Dkt. No. 131 at 13–16), apparently voluntarily dismissing any individual tort claims they appeared to raise against the NWRC Individual Defendants in the Amended Complaint (*see* Dkt. No. 82 ¶¶ 147–161).[5] As such, Plaintiffs argue that the NWRC Individual Defendants' common law and statutory affirmative defenses to tort liability are inapplicable. Dkt. No. 131 at 14–16. If only the respective § 1983 claims remain, the NWRC Individual Defendants concede that their tort defenses should be dismissed. Dkt. No. 149 at 10–11.

---

[5] The Court reads the Amended Complaint as Defendants appear to have read it, as including individual tort claims against each of the NWRC Individual Defendants. *See* Dkt. No. 82 ¶¶ 147–161. The Court now understands Plaintiffs to contend that the allegations in the Amended Complaint regarding the NWRC Individual Defendants' conduct also go to the negligence claims against Whatcom County, but that no such claims have been raised against these individuals directly. Dkt. No. 131 at 14, n.60. Because the tort claims appear to arise from the face of the Amended Complaint, and out of an abundance of caution, the Court interprets Plaintiffs' single claim argument as a motion for voluntary dismissal of the tort claims per Fed. R. Civ. P. 41.

1    The Court therefore DISMISSES all state law tort claims against the NWRC Individual

2    Defendants per Fed. R. Civ. P. 41(a)(2), and GRANTS Plaintiffs' request for summary judgment

3    as to Defendants' third, fourth, seventh, eighth, and ninth affirmative defenses.

### d)    *Fifth Affirmative Defense: Failure to Mitigate Damages*

5    Plaintiffs seek damages suffered by Ms. Jefferson directly, as well as on their own behalf

6    as surviving family members. Plaintiffs allege:

> []As a direct and proximate result of the deliberate indifference of each
> individually named Defendant . . . . [Ms. Jefferson] suffered pre-death pain,
> anxiety, and terror, before leaving behind a loving family.
>
> []As a direct and proximate result of the deliberate indifference of each
> individually named Defendant, Plaintiffs have suffered the loss of familial
> association with [Ms. Jefferson] . . . . Plaintiffs have suffered and continue to
> suffer extreme grief and harm due to mental and emotional distress . . . .

12   Dkt. No. 82 ¶¶ 200–201. Plaintiffs go on to request "general, special, and punitive damages,

13   including damages for pain, suffering, terror, loss of consortium, and loss of familial relations,

14   and loss of society and companionship [] pursuant to 42 U.S.C. §§ 1983 and 1988, in an amount

15   to be proven at trial." *Id.* ¶ 219(a).

16   Plaintiffs do not dispute that the duty to mitigate applies in cases involving § 1983

17   claims. Dkt. No. 131 at 15 (quoting *Wolfe v. Vill. of Brice*, 997 F. Supp. 939, 945 (S.D.

18   Ohio 1998) ("[I]n a § 1983 case, the plaintiff has a duty to mitigate damages.")). Rather,

19   Plaintiffs argue that failure to mitigate cannot apply to their § 1983 claims against the NWRC

20   Individual Defendants as a matter of law because "Ms. Jefferson died as a result of the wrong

21   [that] was committed. . . . there was no opportunity to mitigate." Dkt. No. 131 at 15. But

22   Defendants raise the duty to mitigate damages doctrine as to Ms. Jefferson's "surviving relatives,

23   and named Plaintiffs" in this action, not Ms. Jefferson. Dkt. No. 149 at 10.

24

The mitigation defense looks to Plaintiffs' actions after the alleged wrong took place. *Cobb v. Snohomish Cnty.*, 935 P.2d 1384, 1389 (Wash. Ct. App 1997) (citing Restatement (Second) of Torts § 918 (1979)). Defendants clarify that their failure to mitigate defense is predicated on the individual Plaintiffs' lack of efforts to minimize their own emotional distress damages arising after Ms. Jefferson's death through such actions as "seek[ing] grief counseling or [] other appropriate forms of mental health care." Dkt. No. 149 at 10; *see also* Dkt. No. 124 at 41–43. Plaintiffs do not refute Defendants' claims; instead, they argue that Defendants' factual assertions are insufficient to support granting summary judgment on the failure to mitigate defense. Dkt. No. 152 at 5. But Defendants are not attempting to establish the defense on summary judgment. To survive Plaintiffs' summary judgment motion, Defendants need only show that a material dispute of fact exists (*see* Fed. R. Civ. P. 56), which they do.

Plaintiffs further argue that there is no duty to mitigate against intentional conduct, such as the conduct allegedly giving rise to their § 1983 claim.[6] Dkt. Nos. 131 at 15, 152 at 4–5 (citing *Cobb*, 935 P.2d at 1390). This is an overly broad interpretation of the intentional tort exception to the mitigation defense. First, *Cobb* examines the exception to the duty to mitigate in a case that does not include a § 1983 claim. *See* 935 P.2d at 1390. Presumably, this is why Plaintiffs cite cases analogizing § 1983 claims to intentional torts. Dkt. 131 at 15 (citing *Donovan v. Reinbold*, 433 F.2d 738 (9th Cir. 1970); *DiVerniero v. Murphy*, 635 F. Supp. 1531, 1532 (D. Conn. 1986) (citing *Daniels v. Williams*, 474 U.S. 327 (1986))). But none of these cases address the failure to mitigate defense.

---

[6] Plaintiffs reiterate that they have raised only § 1983 claims against the NWRC Individual Defendants, and therefore the Court dismisses all state law tort claims against these defendants. *See supra* § III.A.1.c. Thus, the Court need not address whether this defense may be maintained as to any of those claims.

Second, Plaintiffs cite *Cobb* as their primary authority for the proposition that there is categorically no duty to mitigate damages from an intentional tort (*see* Dkt. No. 131 at 15), but the *Cobb* court expressly *rejected* this argument. The court recognized that there is no duty to mitigate damages arising from intentional conduct. *Cobb*, 935 P.2d at 1390. However, the court also clarified that the term "intentional" in the context of the failure to mitigate defense refers to "*the harm*." *Id.* (citation omitted) (emphasis original). The Restatement of Torts lays out the failure to mitigate defense, also known as the avoidable consequences doctrine: "One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended *the harm* or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests." Restatement (Second) of Torts § 918 (1979) (emphasis added); *see also Cobb*, 935 P.2d at 1390 (quoting same). Plaintiffs provide no evidence that Defendants intended *the harm* they allege they suffered as result of Ms. Jefferson's death. Thus, the Court finds that Defendants can raise the defense.[7]

The Court therefore DENIES Plaintiffs' request for summary judgment as to the NWRC Individual Defendants' fifth affirmative defense of failure to mitigate.

---

[7] Plaintiffs also argue, without citation to any authority, that Defendants "waived their opposition" to Plaintiffs' assertion on this issue by failing to address it in their response brief. Dkt. No. 152 at 4–5. This is a misstatement of the applicable rules, which allows a Court to consider an unopposed assertion of fact as undisputed and grant summary judgment accordingly. *See* Fed. R. Civ. P. 56(e). Here, Plaintiffs have raised an assertion of law, not fact, regarding the applicability of the mitigation of damages defense to their § 1983 claim. Thus, the "waiver" rule does not apply.

1

2

     *e)*     ***Sixth Affirmative Defense and Request for Costs and Fees[8]:***
             ***Statute of Limitations***

3

Plaintiffs argue that the Court previously denied dismissal on statute of limitations

4

grounds (*see* Dkt. No. 57 at 3) and that fees and costs should be awarded because the NWRC

5

Individual Defendants frivolously reassert the defense in bad faith in their respective Answers to

6

the Amended Complaint (*see* Dkt. Nos. 96–98). Dkt. No. 131 at 15–18. Plaintiffs admit that they

7

mistakenly maintained a statute of limitations defense in their Answers to the Amended

8

Complaint and concede that it should be dismissed, but dispute that they did so in bad faith. Dkt.

9

No. 149 at 11.

10

Plaintiffs point to the Court's prior admonishment about the expected conduct of counsel

11

in this case as evidence of Defendants' bad faith, implying that Defendants intentionally

12

reasserted the defense in defiance of the Court's dismissal order. Dkt. No. 131 at 17. The same

13

bad-faith argument could be raised as to Plaintiffs' failure to voluntarily dismiss the state law tort

14

claims they appeared to raise against the NWRC Individual Defendants in their Amended

15

Complaint before moving for summary judgment, only to now insist in their summary judgment

16

briefing that Plaintiffs never intended to assert such claims. The Court's expectation of

17

cooperation to resolve issues without Court intervention goes both ways. It is apparent that the

18

issues on summary judgment could have been significantly narrowed without Court intervention

19

had the Parties conferred and cooperated as admonished *before* moving for summary judgment,

20

avoiding the need for such extensive briefing on claims the Parties ultimately concede are not at

21

issue.

22

23

24

---

[8] The NWRC Individual Defendants noted in their response that Plaintiffs informally agreed to withdraw their request for sanctions after filing their motion for summary judgment. Dkt. No. 149 at 11. As far as the Court can tell, Plaintiffs have made no effort to inform the Court of their intent to withdraw the request for sanctions. *See, e.g.*, Dkt. No. 152 at 2 (acknowledging Defendants' concession about dismissal of the defense but remaining silent about their intent to withdraw the request for sanctions).

1    Consequently, Plaintiffs fail to dispute Defendants' claim of inadvertent mistake and

2    cannot show that the statute of limitations defense was reasserted in bad faith. The Court

3    therefore DENIES Plaintiffs' request for sanctions. Plaintiffs' request for summary judgment is

4    GRANTED as to this affirmative defense.

5                    **2.      Dr. Andrews' Affirmative Defenses**

6    Dr. Andrews asserts the same ten affirmative defenses as the Whatcom Defendants. Dkt.

7    No. 94 at 21–22. Plaintiffs challenge only Dr. Andrews' ability to assert the qualified immunity

8    defense. Dkt. No. 131 at 18.

9    Plaintiffs focus on the fact that "Dr. Andrews is a private physician contracting with the

10   County" and point to out-of-circuit cases refusing to extend qualified immunity to part-time

11   medical contractors in correctional settings. *See* Dkt. No. 131 at 18. Plaintiffs also argue Ninth

12   Circuit case law prohibits qualified immunity for a private medical contractor in a correctional

13   setting. Dkt. No. 152 at 6 (citing *Jensen v. Lane Cnty.*, 222 F.3d 570 (9th Cir. 2000)). Defendants

14   argue that *Jensen* is distinguishable because Dr. Andrews was not providing psychiatric services

15   for the purpose of involuntary civil commitments. Dkt. No. 148 at 6. Defendants also point to a

16   recent out-of-circuit case in which the Tenth Circuit allowed a private medical provider who

17   contracted as a part-time doctor for a county jail in Utah to assert qualified immunity under very

18   similar circumstances as Dr. Andrews. *See Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 855

19   (10th Cir.), *cert. denied sub nom. Est. of Jensen By Jensen v. Tubbs*, 142 S. Ct. 339 (2021).

20   The Ninth Circuit relied heavily on the Supreme Court's decision in *Richardson v.*

21   *McKnight* when it decided *Jensen*. In *Richardson*, the Supreme Court held that prison guards

22   operating a private prison facility under contract were not entitled to assert qualified immunity.

23   521 U.S. 399, 409–411. The *Richardson* court found that the prison employers resembled

24   employees of private firms more than government employees because "marketplace pressures

provided the private firm with strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful, or 'nonarduous' employee job performance" and contractual provisions such as employee indemnification allowed the firm to "respond to those market pressures through rewards and penalties that operate directly upon its employees." 521 U.S. at 410–411. Relying on *Richardson*, the Ninth Circuit in *Jensen* looked to whether the physician's employer was similarly "engaged in a complex administrative task" where "the potential for insurance, indemnification agreements, and higher pay all may operate to encourage qualified candidates to engage in this endeavor and to discharge their duties vigorously." *Id.* at 578 (citing *Richardson*, 521 U.S. at 408–411). Finding that the physician worked for such an employer, the *Jensen* court held that the physician was not entitled to assert qualified immunity.

*Jensen* suggests that there is a colorable argument that qualified immunity might not extend to a private physician such as Dr. Andrews. However, since *Jensen* was decided, and in a case that post-dates most of Plaintiffs' out-of-circuit authority, the Supreme Court allowed application of qualified immunity to a purely private contractor retained by a governmental entity to perform work that would otherwise have been performed by a covered governmental employee. *See Filarsky v. Delia*, 566 U.S. 377, 394 (2012). In *Filarsky*, the Court examined the application of qualified immunity in a case involving a private attorney contracted by a municipality to investigate an internal personnel matter, given its decisions in *Richardson* and its progeny. *Id.* at 383-394. The Court cited several examples of individuals receiving immunity for actions taken while engaged in public service on a temporary basis. *Id.* at 388-389. The Court overturned the appellate court's conclusion that the attorney's status as a private contractor who performed work for the government on a part-time basis categorically barred the application of the qualified immunity doctrine. *Id.* at 389. "Immunity under § 1983 should not vary depending

on whether an individual working for the government does so as a full-time employee, or on some other basis." *Id.*

Dr. Andrews' situation is qualitatively different from the individuals in *Richardson* and *Jensen* who worked for private firms subject to marketplace pressures and is more like the situation described in *Filarsky*. Unlike the facts in *Richardson* and *Jensen*, here, "Dr. Andrews was in many ways a full-time correctional doctor, splitting his work week between Whatcom and Snohomish Counties," which "allows these two counties the ability to retain a highly specialized medical professional at a cost proportional to their population and tax revenue." Dkt. No. 148 at 7. Dr. Andrews previously had been a full-time correctional practitioner in King County and at the State Department of Corrections facility in Monroe. *Id.* Dr. Andrews is a part-time private contractor for Whatcom County because "Whatcom County cannot compete with the State or with King County, both in inmate populations and in correctional budgets. Whatcom County must hire on a part-time basis." *Id.* Defendants further assert that Dr. Andrews works completely "within the government system" and "does not promulgate the jail's medical policies… does not hire, discipline, or fire the other [jail] medical staff." *Id.* Plaintiffs do not dispute any of these facts. Taking these facts in the light most favorable to the nonmoving party, the Court finds that Dr. Andrews raises a material dispute of fact as to whether, as a part-time private medical contractor, he is a private contractor retained by a governmental entity to perform work that would otherwise have been performed by a covered governmental employee. *Filarsky*, 566 U.S. at 394. The Court therefore DENIES Plaintiffs' request for summary judgment as to Dr. Andrews' second affirmative defense of qualified immunity.

For the reasons stated in Sections III.A.1. and III.A.2., the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for summary judgment on the individual medical contractors' affirmative defenses at Dkt. No. 131.

### B.   Plaintiffs' Motion for Summary Judgment on the Whatcom Defendants' Affirmative Defenses (Dkt. No. 109)

Plaintiffs move to dismiss all but one of the Whatcom Defendants' affirmative defenses. *See* Dkt. Nos. 94, 109.

#### 1.   First Affirmative Defense: Failure to State a Claim

Like the NWRC Individual Defendants (*see supra* § III.A.1.a.), the Whatcom Defendants concede that "[i]n light of discovery," their failure to state a claim defense should be dismissed. Dkt. No. 122 at 5. Plaintiffs' request for summary judgment is therefore GRANTED as to this affirmative defense.

#### 2.   Third, Sixth, and Eighth Affirmative Defenses: Public Duty Doctrine and Good Faith Immunity, Failure to Exhaust Administrative Remedies, and Sovereign Immunity

The Whatcom Defendants concede that three of their affirmative defenses (public duty doctrine and good faith immunity, failure to exhaust remedies, and sovereign immunity) should be dismissed. Dkt. No. 122 at 5, 8. Plaintiffs' request for summary judgment is therefore GRANTED as to these affirmative defenses.

#### 3.   Fourth Affirmative Defense: Comparative Fault

"Washington courts have long recognized a jailer's special relationship with inmates, particularly the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 244 P.3d 924, 927 (Wash. 2010) (en banc). From this special relationship arises "a nondelegable duty to provide medical care to a prisoner in custody." *Id.* at 648 (Madsen, J., concurrence/dissent). Plaintiffs argue that this nondelegable duty precludes the Whatcom Defendants from raising comparative fault as an affirmative defense. Dkt. No. 109 at 18–19. To support the proposition that contributory fault is categorically barred as a matter of law, Plaintiffs point to the lead opinion in *Gregoire*, where a plurality of the Washington State Supreme Court held that a "jail's

duty to protect inmates includes protection from self-inflicted harm and, in that light, contributory negligence has no place in such a scheme." 244 P.3d at 932; *accord Meagher v. King Cnty.*, 2020 WL 3872744, at *14 (W.D. Wash. July 9, 2020), *aff'd on other grounds sub nom. Meagher v. Prioleau*, 857 F. App'x 908 (9th Cir. 2021).

A close read of all of the opinions in *Gregiore* reveals that Plaintiffs' proposition, while representing the plurality's reasoning from the lead opinion, did not garner the support of a majority of the court. On the other hand, Chief Justice Madsen (joined by Justices James M. Johnson and Owens) concurred with the lead opinion's result but dissented on this issue, concluding that despite a jailer's heightened duty because of its special relationship with inmates, "it has no freestanding duty to prevent inmate self-inflicted harm . . . [and o]nly when the plaintiff can prove that the jail assumed the inmate's duty of self-care does comparative negligence become inappropriate." *Gregiore*, 244 P.3d at 933 (Madsen, J., concurrence/dissent). Additionally, Justice Alexander dissented from the lead opinion's conclusions (in an opinion joined by Justices Fairhurst and James M. Johnson), but noted that "I, nevertheless, agree with Chief Justice Madsen's discussion of comparative negligence and her opinion that on remand the trial court should 'be free to consider whether to instruct the jury on comparative fault.'" *Id.* at 655, n.17 (Alexander, J., dissent). Between the partial concurrence and the dissent, Chief Justice Madsen's conclusion about contributory fault in a jail setting—which was collectively joined by four other Justices—therefore appears to represent the majority position of the court.

While the Whatcom Defendants owed Ms. Jefferson a "duty to ensure [her] health, welfare, and safety," which included a nondelegable duty to provide Ms. Jefferson with medical care, "prevention of self-inflicted harm [is] not generally the purpose of incarceration." *Id.* at 645–61 (Madsen, J., concurrence/dissent). Defendants are only barred from asserting the defense if they assumed Ms. Jefferson's duty of self-care, which is "generally a question of fact."

1   *Id.* at 649. Defendants assert that "mental and physical health screenings [of Ms. Jefferson] were

2   conducted in earnest . . . . [including] her fit for jail examination, her booking medical screening,

3   and three separate contacts with nursing staff in the jail." Dkt. No. 122 at 5–6. Thus, Defendants

4   argue that Ms. Jefferson may be found to have maintained some independent duty of self-care as

5   to the cause of her death. *Id.* at 7. In particular, they assert that evidence suggests that

6   Ms. Jefferson's death was caused by methadone toxicity, and the record also includes facts that

7   suggest she withheld the information about her drug consumption from jail correctional and

8   medical staff, and in fact, adamantly denied drug use on multiple occasions. Dkt. No. 122 at 6–7.

9        The Court therefore finds that the Whatcom Defendants have raised a genuine dispute of

10   material fact and DENIES Plaintiffs' request for summary judgment as to the contributory fault

11   affirmative defense.

12             **4.**      **Fifth Affirmative Defense: Failure to Mitigate Damages**

13        Plaintiffs' arguments in favor of summary judgment and the Whatcom Defendants'

14   opposition essentially mirror the arguments on this same affirmative defense raised in Plaintiffs'

15   motion against the NWRC Individual Defendants. *Compare* Dkt. Nos. 109 at 20, 122 at 7–8,

16   *and* 125 at 4–5 *with* Dkt. Nos. 131 at 14–15, 149 at 10, *and* 152 at 4–6. Thus, for similar reasons

17   (*see supra* § III.A.1.d.), the Court DENIES Plaintiffs' request for summary judgment as to the

18   Whatcom Defendants' fifth affirmative defense for failure to mitigate.

19             **5.**      **Seventh Affirmative Defense: Third-Party Negligence**

20        Plaintiffs argue that the special relationship between inmate and jailer recognized in

21   Washington also precludes the third-party negligence defenses because the jailer assumes a

22   nondelegable duty to protect against all foreseeable harms to the inmate. Dkt. No. 109 at 18–19.

23        The Whatcom Defendants do not deny that they owed Ms. Jefferson a heightened duty

24   while she was in their custody (Dkt. No. 122 at 7), arguing instead there is no evidence that

Ms. Jefferson was in their custody during her fit-for-jail evaluation at St. Joseph Medical Center (*id.* at 8). Defendants argue that PeaceHealth may have breached its duty of care to Ms. Jefferson, which was separate and distinct from the nondelegable duty the Whatcom Defendants assumed upon taking her into custody after the fit for jail exam; therefore, a jury could conclude that PeaceHealth's breach was the proximate cause of Ms. Jefferson's death. *Id.*

Plaintiffs do not refute Defendants' claims that Ms. Jefferson was not in their custody during the fit for jail exam. Instead, Plaintiffs argue that Defendants have not offered sufficient evidence of PeaceHealth's negligence to support granting summary judgment on the third-party negligence defense. Dkt. No. 125 at 6. The Whatcom Defendants have not moved for summary judgment on this defense and need only raise a colorable dispute of fact to survive summary judgment. Fed. R. Civ. P. 56.

Taking the facts in the light most favorable to the nonmoving party, the Court finds that Plaintiffs fail to show that the Whatcom Defendants are precluded from asserting PeaceHealth's potential negligence as an affirmative defense as a matter of law. The Court therefore DENIES Plaintiffs' request for summary judgment on this affirmative defense.

### 6.   Ninth Affirmative Defense: RCW 5.40.060 Defense to Personal Injury or Wrongful Death

The Whatcom Defendants generally assert RCW 5.40.060 as an affirmative defense without specifying a particular section of the statute. Dkt. No. 94 at 22. Plaintiffs argue that: (1) the statute applies only in motor vehicle cases; and (2) even if the statute applies, contributory negligence does not apply since the duty to keep a prisoner in health is nondelegable. Dkt. No. 109 at 22 (quoting *Gray v. City of Seattle*, 9 Wash. App. 2d 1011 (Wash. App. 2019) (unreported)).

First, Plaintiffs misunderstanding of the *Gray* court's conclusion has led them to misinterpret the statute. RCW 5.40.060(1) establishes "a complete defense to an action for damages for personal injury or wrongful death" when (1) "the person injured or killed was under the influence of intoxicating liquor or any drug," (2) the injured party's own intoxication is shown to be the proximate cause of injury, and (3) the person is found to be more than 50 percent at fault. RCW 5.40.060(1); *see also Gerlach v. Cove Apartments, LLC*, 471 P.3d 181, 186 (Wash. 2020). The statute gives rise to an affirmative defense in any personal injury or wrongful death claim. *See, e.g.*, *Gerlach*, 471 P.3d at 189 (statute asserted as affirmative defense in landlord tenant property liability case); *Hansen v. Friend*, 824 P.2d 483, 487 (Wash. 1992) (statute applicable to bar social host's liability to parents of intoxicated minor in wrongful death case). An exception to RCW 5.40.060(1) prohibits an *intoxicated driver* from asserting the defense to liability, so long as the injured party's own intoxication was not a proximate cause of death or injury. RCW 5.40.060(2).

This construction of the statute is consistent with *Gray*. In *Gray*, the City of Seattle was sued for the wrongful deaths of a driver and passenger resulting from a motor vehicle accident where they collided with an allegedly improperly installed fire hydrant. 9 Wash. App. 2d 1011 at *1–*2. The trial court granted Seattle partial summary judgment as to whether both the driver and passenger were legally intoxicated as a matter of law. *Gray v. The City of Seattle*, 2017 WL 6541663, at *1 (Wash. Super. June 13, 2017). But the trial court denied summary judgment as to the passenger on contributory fault, which the court determined was an issue of fact for the jury. *Id.* On appeal, the plaintiffs argued that the passenger's level of intoxication was irrelevant unless Seattle could also prove that the passenger's intoxication was a proximate cause of death per the RCW 5.40.060(2) exception. *See* Brief of Appellants at 46–47, *Gray*, 9 Wash. App. 2d 1011. The appellate court concluded that the RCW 5.40.060(2) *exception* only "applies to

1    actions against the driver of a motor vehicle, it does not apply to the Estate's suit against the

2    City." *Gray*, 9 Wash. App. 2d at *10. Similarly, the RCW 5.40.060(2) exception is not

3    applicable in this case but that does not affect the availability of the RCW 5.40.060(1) statutory

4    defense. The Whatcom Defendants can assert RCW 5.40.060(1), and the exception does not

5    apply because none of the Whatcom Defendants were intoxicated drivers.

6            Second, the Court acknowledges Plaintiffs' concern about the public policy implications

7    of allowing the County to assert this defense in a case involving the alcohol- or drug-related

8    death of an inmate. The Court finds that this defense does not relieve the County of its

9    heightened duty that arises from the jailer-inmate relationship. *See supra* § III.B.3. That said, it is

10   for a jury to decide whether "the jail assumed the inmate's duty of self-care" to render any

11   apportionment of contributory fault to Ms. Jefferson inappropriate, *see Gregoire*, 244 P.3d at 933

12   (Madsen, J., concurrence/dissent), precluding the County from being able to establish a critical

13   element of this defense.

14           Plaintiffs further argue that Defendants lack sufficient evidence to prove the elements of

15   the defense. Dkt. No. 109 at 22–23. To prove the defense, Defendants would have to show that

16   (1) Ms. Jefferson was intoxicated, (2) the intoxication was a proximate cause of her death, and

17   (3) that she was more than fifty percent at fault. *Gerlach*, 471 P.3d at 186. Plaintiffs assert that

18   Ms. Jefferson was not under the influence of intoxicating liquor at the time of her death and that,

19   in fact, the lack of alcohol in her body is what killed her. Dkt. No. 109 at 22. But Defendants

20   have provided evidence that Ms. Jefferson may have been intoxicated by methadone, and her

21   death may have been caused by methadone toxicity. Dkt. No. 122 at 6. The Court finds the

22   Whatcom Defendants have raised a genuine dispute of material fact on this defense.

23           Consequently, Plaintiffs' request for summary judgment on the RCW 5.40.060 statutory

24   defense is DENIED.

### 7.    Tenth Affirmative Defense: RCW 4.24.420 Felony Bar to Personal Injury or Wrongful Death Arising from Law Enforcement Activities

Washington statute RCW 4.24.420 bars liability for any personal injury or death that results from law enforcement activities if the injured party was engaged in the commission of a felony that was a proximate cause of the injury or death; *see also Davis v. King Cnty.*, 479 P.3d 1181, 1183 (Wash. Ct. App. 2021). The statute expressly precludes this defense in § 1983 actions (*see* RCW 4.24.420(3)), thus it would only apply to Plaintiffs' state law tort claims. Defendants appear to base the defense on Ms. Jefferson's possible possession of a controlled substance—methadone—at the time of her death, which would constitute a class C felony in Washington. Dkt. No. 122.

Plaintiffs argue that there is insufficient evidence to establish felony possession as a matter of law. Dkt. Nos. 109 at 23–24; 125 at 9. At this stage, the Court does not weigh the evidence, it just determines "whether the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52. Defendants have pointed to evidence that shows Ms. Jefferson may have had methadone in her system when she died and expert evidence indicating methadone overdose may have contributed to her cause of death. Dkt. No. 122 at 10. Whether the Defendants' evidence is sufficient to prove felony possession or that her alleged possession of methadone was a proximate cause of her death are questions of fact best left to the jury.[9] The Court therefore DENIES Plaintiffs' request for summary judgment on this defense.

---

[9] Again, the Court acknowledges Plaintiffs' public policy concerns about allowing the County to assert this defense under the circumstance of this case. Here, though, the Court presumes the Washington State Legislature weighed the public policy implications in adopting the statute. Plaintiffs have provided no authority indicating any interpretation of the statute that would limit its application in this case.

1   For the reasons stated in Sections III.B.1–7., the Court GRANTS IN PART and DENIES IN

2   PART Plaintiffs' motion for summary judgment on the Whatcom Defendants' affirmative

3   defenses at Dkt. No. 109.

4   ### C.    Defendant PeaceHealth's Motion for Summary Judgment (Dkt. No. 104)

5   Defendant PeaceHealth moves to dismiss all claims raised against them on summary

6   judgment. PeaceHealth argues that (1) it is not vicariously liable for Dr. Weiche's care of

7   Ms. Jefferson during the fit-for-jail evaluation at St. Joseph Medical Center;[10] (2) RCW 7.70

8   precludes Plaintiffs' gross negligence claim; and (3) Plaintiffs lack expert testimony or other

9   admissible evidence to establish any of their claims. Dkt. No. 104 at 8. PeaceHealth's motion is

10  thoroughly briefed and supported with citation to materials in the record, including declarations,

11  documents, interrogatory answers, depositions, and other discovery materials. *See* Dkt. No. 104;

12  *see also* Fed. R. Civ. P. 56(c)(1)(A).

13  Plaintiffs do not oppose PeaceHealth's motion. Instead, Plaintiffs ask the Court not to

14  dismiss PeaceHealth unless it also prohibits the Whatcom Defendants from asserting their

15  comparative fault and third-party negligence defenses. Dkt. No. 117 at 3. Plaintiffs argue that if

16  PeaceHealth is dismissed, and the Whatcom Defendants succeed in asserting their defenses at

17  trial, Plaintiffs may be denied any recovery for PeaceHealth's potential wrongs.[11] Dkt. No. 117

18  at 4. This may very well be true, but it is not a reason to deny PeaceHealth summary judgment.

19  The Whatcom Defendants did not, nor were they required to, sue PeaceHealth; Plaintiffs did. It is

22  [10] Plaintiffs agreed to dismiss all claims against Dr. Weiche with prejudice before the filing of PeaceHealth's motion for summary judgment. Dkt. No. 102.

23  [11] The Parties are reminded that the Court's denial of Plaintiffs' request for summary judgment on the Whatcom Defendants' fourth and seventh affirmative defenses (*see supra* §§ III.B.3, III.B.5) does not relieve the Defendants

24  of their burden to prove the affirmative defenses at trial.

Plaintiffs' burden on summary judgment to show that there is a genuine dispute of fact as to PeaceHealth's liability.

Per Rule 56, a court considering an unopposed motion for summary judgment may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e)(2).

The Court has no obligation "to scour the record in search of a genuine issue of triable fact." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Seeing no opposition to PeaceHealth's motion, the Court finds it appropriate to consider PeaceHealth's facts undisputed. Fed. R. Civ. P. 56(e)(2). PeaceHealth's motion is itself sufficient to support summary judgment. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("[T]he district court may determine . . . summary judgment[] based on the papers submitted on the motion. . . . [and] need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

As such, the Court GRANTS PeaceHealth's motion for summary judgment (Dkt. No. 104) and DISMISSES all claims against PeaceHealth.

### D. The NWRC Individual Defendants' Motion for Summary Judgment (Dkt. No. 146)

Defendants Kristine Glasglow, Sally Andrews, and Krista Robinson each move for summary judgment on all claims raised against them. As the Court has dismissed all state law

tort claims against these Defendants (*see supra* § III.A.1.c.),[12] the only remaining claims are the § 1983 claims in their personal or policymaker capacities. Defendants assert that summary judgment is appropriate because the NWRC Individual Defendants are eligible for qualified immunity and Plaintiffs cannot establish a violation of § 1983.

### 1.  Krista Robinson

#### a)  *Nurse Robinson's Claim of Qualified Immunity*[13]

Two questions must be answered when a defendant raises the defense of qualified immunity: (1) whether qualified immunity is categorically available; and (2) if qualified immunity is available generally, whether the individual defendant is entitled to it in the particular case. *Jensen*, 222 F.3d at 576 (citing *Richardson*, 521 U.S. at 399).

##### (1)  Whether qualified immunity is categorically available

Determining whether qualified immunity is categorically available requires an evaluation of the appropriateness of the defense given its historical availability and the policy considerations underpinning the doctrine. *Richardson*, 521 U.S. at 399; *Jensen*, 222 F.3d at 576. Courts look "*both* to history *and* to the purposes that underlie government employee immunity" to find the answer. *Richardson*, 521 U.S. at 404 (emphases added). The linchpin in this case for

---

[12] Defendants also argue that Plaintiffs' negligence claims against them would fail on summary judgment in any event, asserting that there is no dispute as to the proximate cause of Ms. Jefferson's death being probable methadone toxicity nor that Nurse Robinson met her duty of care. Dkt. No. 146 at 19–25. In response, Plaintiffs reassert that "no [negligence] claim is asserted against" the NWRC Individual Defendants. Dkt. No. 155 at 32. Nevertheless, they counter Defendants' arguments by pointing to conflicting expert medical testimony on the cause of death issue and arguing that the facts asserted in opposition to summary judgment on the § 1983 claim against Nurse Robinson could also be inferred by a fact finder as showing she violated her duty of care. *Id.* at 32–33. Because the Court previously dismissed all claims raised against the NWRC (Dkt. No. 57), and now dismisses all negligence claims raised against the NWRC Individual Defendants (*see supra* § III.A.1.c), the Court need not address the Parties' arguments on summary judgment as no negligence claims remain against these defendants.

[13] As the Court finds Ms. Andrews and Ms. Glasgow should be dismissed as defendants, *see infra* § III.D.2., the Court only addresses the qualified immunity issue as to Nurse Robinson.

both factors is whether Nurse Robinson's employer, NWRC, is a governmental entity or a private corporate entity.

In *Richardson*, the Supreme Court determined that "[h]istory does not reveal a 'firmly rooted' tradition of immunity applicable to privately employed prison guards" because it found "no conclusive evidence of a historical tradition of immunity for private parties carrying out [prison management activities]." 521 U.S. at 404, 407. The Ninth Circuit, relying on *Richardson*, followed suit in *Jensen*, holding that there was no "firmly rooted tradition" of qualified immunity for a private physician who contracted with a county to provide services in connection with temporary mental health detention. 222 F.3d at 577. Plaintiffs rely on the *Richardson* and *Jensen* line of cases, insisting that NWRC is a purely private entity while Defendants assert that NWRC is a governmental entity. Having been presented with no evidence of whether there is a "firmly rooted tradition" of immunity for a quasi-governmental entity like NWRC, the Court makes no finding about whether qualified immunity was historically available to an entity like NWRC (*see supra* § III.A.1.b.), and therefore, Nurse Robinson.

However, the inquiry does not end there. The Court must still look to the policy justification for allowing a claim of qualified immunity under the facts of this case even if there is no clear answer on the history question. *Jensen*, 222. F.3d at 577. The traditional justifications for affording immunity to government officials include: (1) "protecting the public from unwarranted timidity on the part of public officials"; (2) ensuring that talented candidates are not deterred from entering public service; and (3) preventing the distraction to public officials caused by lawsuits. *Richardson*, 521 U.S. at 409–411; *see also Filarsky*, 566 U.S. at 389–90; *Jensen*, 222 F.3d at 577.

The most important "special government immunity-producing concern" is "unwarranted timidity" or "overly timid, insufficiently vigorous, unduly fearful, or 'nonarduous' employee job

1   performance." *Richardson*, 521 U.S. at 409–10. Competitive marketplace pressures such as the

2   threat of replacement that private companies face provide them with strong incentives to do both

3   a safer and more effective job. *Id.* In addition, when private companies must buy comprehensive

4   insurance, that "increases the likelihood of employee indemnification and to that extent reduces

5   the employment-discouraging fear of unwarranted liability potential applicants face." *Id.* at 411.

6   Private firms can also "offset any increased employee liability risk with higher pay or extra

7   benefits." *Id.* Because these incentives are not present in governmental systems, a "special

8   immunity-related need to encourage vigorous performance" exists in the context of government

9   employment. *Id.* at 410. Plaintiffs recognize that government employees "typically act within a

10  *different* system" for this reason. Dkt. No. 131 at 12 (citing *Richardson*, 521 U.S. at 410). And

11  the Supreme Court noted that "[a]ffording immunity not only to public employee but also to

12  others acting on behalf of the government similarly serves to 'ensure that talented candidates

13  [are] not deterred by the threat of damages suits from entering public service.'" *Richardson*, 521

14  U.S. at 408 (quoting *Wyatt v. Cole*, 504 U.S. 158, 167 (1992)).

15          Here, NWRC maintains insurance for its employees and assumes the risk of "all damage,

16  loss, cost, and expense" of its employees "arising out of the performance of any duty performed,

17  or not performed, acting in good faith" that is not covered by NWRC's insurance. Dkt.

18  No. 147-16 at 11. These facts lean toward NWRC being more like a private employer.

19          On the other hand, Plaintiffs admit that "NWRC pays its staff '15% below average

20  market rates,' savings which are then passed on to the County," which makes it "'very difficult

21  to find qualified nurses.'" Dkt. No. 131 at 6 (citation omitted). The Ninth Circuit noted that "the

22  potential for insurance, indemnification agreements, *and* higher pay *all* may operate to encourage

23  qualified candidates to engage in this endeavor and to discharge their duties vigorously." *Jensen*,

24  222 F.3d at 578 (emphasis added). Plaintiffs concede that NWRC's paying *below average*

*market rates* is *discouraging* qualified nurses from working with it. Dkt. No. 131 at 6. The fact that NWRC pays its nurses significantly below market rates, along with the undisputed facts detailed in Section III.A.1.b. (*i.e.*, the agreement creating NWRC was ratified by each participating county's legislative body, NWRC is governed by elected officials, and NWRC employees are provided state health benefits and state-run retirement benefits), lead the Court to conclude that, on balance, NWRC operates more in the realm of the governmental employment system rather than as a private firm. Therefore, based on these specific facts, and not having found any guidance on this issue under facts like these, the Court concludes that qualified immunity is available to NWRC's employees.

> (2) <u>Whether Nurse Robinson is entitled to qualified immunity under the facts of this case</u>

Determining whether Nurse Robinson is entitled to qualified immunity requires a "particularized analysis" of whether she "violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Jensen*, 222 F.3d at 576 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This requires a two-prong inquiry: (1) do the facts as alleged make out a constitutional violation and (2) was the constitutional right clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A court may address the two prongs of the inquiry in any order. *Pearson*, 555 U.S. at 236.

Defendants concede that Ms. Jefferson was constitutionally entitled to the provision of "adequate medical assistance, adequate medical screening, and [access to] care." Dkt. No. 146 at 16. This right arises from the Fourteenth Amendment's due process clause. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). At the time of the incident, Ninth

Circuit precedent defined the contours of a pretrial detainee's right to be protected from harm while in custody under the Fourteenth Amendment as requiring the application of "something akin to reckless disregard." *Castro*, 833 F.3d at 1070; *see also Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) ("claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard") (quoting *Castro*, 833 F.3d at 1070). The Ninth Circuit also laid out the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer:

> (1) The defendant made an intentional decision with respect to the [medical care or lack of it provided to the plaintiff];
>
> (2) [The medical care or lack of it] put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. As for the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily turn [] on the facts and circumstances of each particular case." *Id.* (internal quotation marks and citation omitted). Thus, the Court finds that Ms. Jefferson's rights were clearly established at the time of the alleged violation.

Next, the Court must determine whether Plaintiffs have alleged sufficient facts to show that Ms. Jefferson's rights were violated. Defendants argue that none of Nurse Robinson's actions were sufficiently unreasonable to meet the objective deliberate indifference standard. Dkt. Nos. 146 at 17–19, 159 at 6. Essentially, Defendants argue that actions taken by Nurse Robinson regarding Ms. Jefferson were done with the intent to minimize the risks associated to

1   alcohol withdrawal. Dkt. No. 146 at 17–18. According to Defendants, Plaintiffs cannot show that

2   Nurse Robinson made any intentional decisions that put Ms. Jefferson at substantial risk of

3   serious harm, nor can they prove that any of the decisions she made were objectively

4   unreasonable, considering the apparent risks, such that the consequences of her actions would

5   obviously lead to Ms. Jefferson's death. *Id.* Plaintiffs respond that some of Nurse Robinson's

6   medical care decisions could have increased Ms. Jefferson's risk of dying from withdrawal. Dkt.

7   No. 55 at 12–16. Specifically, Plaintiffs allege that the facts show Nurse Robinson may have

8   deviated from jail medical policies, delayed providing medical care even after being informed

9   that Ms. Jefferson was seeking care, and failed to timely administer prescribed medication as

10  directed by Dr. Andrews. *Id.* Plaintiffs also present an expert who opines that Nurse Robinson's

11  medical care was not only objectively unreasonable but also was a significant cause of

12  Ms. Jefferson's death. *Id.* at 14.

13      At this stage, the Court does not weigh the evidence, it simply determines "whether the

14  evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S.

15  at 251–52. Viewing the facts in the light most favorable to the nonmoving party and being

16  cognizant of the "particularized analysis" required as well as the fact-intensive nature of this

17  issue, the Court finds that Plaintiffs raise a genuine dispute about Nurse Robinson's potential

18  reckless disregard in carrying out the care of Ms. Jefferson. The Court therefore DENIES the

19  NWRC Individual Defendants' request for summary judgment dismissal of the § 1983 claim

20  raised against Nurse Robinson on qualified immunity grounds.

### b)      *Plaintiffs' § 1983 claim against Nurse Robinson*

22      Defendants also challenge Plaintiffs' individual § 1983 claim against Nurse Robinson on

23  its merits. Dkt. No. 146 at 8–10. Plaintiffs bring a claim against Nurse Robinson in her personal

24  capacity based on the medical care she provided Ms. Jefferson while in pretrial custody at the

Whatcom County jail. Dkt. No. 155 at 12. To establish a claim under §1983 for the inadequate medical care of a pretrial detainee, Plaintiffs must prove (1) the defendant made an intentional decision with respect to the conditions of confinement; (2) which put the plaintiff at substantial risk of suffering serious harm; (3) failed to "take reasonable available measures to abate the risk even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) therefore can be said to have caused the plaintiff's injuries. *Gordon*, 888 F.3d at 1125. This is essentially the same analysis for determining whether Plaintiffs have asserted a constitutional violation to defeat qualified immunity. *See supra* § III.D.1.a.(2). Although the Court must consider the qualified immunity question separately from the question of liability under § 1983, *see Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir. 2003) (citing *Saucier*, 533 U.S. at 121), the Court finds that the same factual disputes that preclude summary judgment as to qualified immunity also defeat Defendant's request for summary judgment on the merits of Plaintiffs' § 1983 claim against Nurse Robinson. *C.f. Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (noting that where the violation prong of the qualified immunity analysis is not established before trial, it effectively merges with the question of liability at trial).

The Court therefore DENIES the NWRC Individual Defendants' request for summary judgment dismissal of the § 1983 claim raised against Nurse Robinson in her personal capacity.

### 2.    Kristine Glasgow and Sally Andrews

Plaintiffs bring claims against Ms. Andrews in her personal capacity as Nurse Robinson's direct supervisor and against Ms. Glasgow in her capacity as Ms. Andrews' supervisor. Plaintiffs also make municipal claims against Whatcom County based in part on both Ms. Glasgow's and Ms. Andrews' status as alleged policymakers for Whatcom County. Since Plaintiffs' policymaker allegations involving Ms. Andrews and Ms. Glasgow are so closely related to the

1   institutional liability claims against Whatcom County,[14] the Court will address those allegations

2   together with similar policymaker allegations raised against the Whatcom Supervisors.[15] The

3   Court will only address the claims for individual § 1983 supervisor liability here.

4     "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his

5   or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

6   connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v.*

7   *Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotations omitted) (citing *Hansen v. Black*,

8   885 F.2d 642, 646 (9th Cir.1989)). Therefore, a supervisor may be held liable under § 1983 only

9   "if he or she was personally involved in the constitutional deprivation or a sufficient causal

10  connection exists between the supervisor's unlawful conduct and the constitutional violation."

11  *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). The focus of the inquiry is on

12  the supervisor's own actions or inaction in bringing about the alleged violation, or the

13  supervisor's knowledge of and failure to prevent a subordinate's violation. *Starr*, 652 F.3d

14  at 1207–128; *see also Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968–69 (9th Cir.

15  2001).

16     a)  **Supervisor Liability for Ms. Andrews**

17    Defendants argue that Ms. Andrews was never personally involved in Ms. Jefferson's

18  care, nor did Ms. Andrews have sufficient knowledge of any of Nurse Robinson's actions at the

19  time to impose supervisory liability. Dkt. No. 146 at 11. Plaintiffs provide no evidence to the

20  contrary. In fact, Plaintiffs make no effort to support their individual § 1983 claim against

21

22  [14] Plaintiffs requested permission to file a single overlength opposition to both the NWRC Individual Defendants' and Whatcom Defendants' respective motions for summary judgment, *see* Dkt. No. 153, and lumped their

23  arguments opposing summary judgment for Ms. Glasgow in with their opposition to the Whatcom Supervisors' request for summary judgment, *see* Dkt. No. 155 at 28–32. Plaintiffs' opposition does not discuss Ms. Andrews as a policymaker. *Id.*

24  [15] *See infra* § III.E.1.

Ms. Andrews or oppose Defendants' specific arguments in their response. *See* Dkt. No. 155. In assessing an unopposed summary judgment motion, the Court may "consider [] fact[s] undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. Proc. 56(e)(2), (3).

Thus, the Court GRANTS the motion for summary judgment as to the § 1983 claim against Sally Andrews in her personal supervisory capacity, and therefore DISMISSES Ms. Andrews as an individual defendant in this case.[16]

### b)   Supervisor Liability for Ms. Glasgow

Defendants argue that Ms. Glasgow's involvement in Ms. Jefferson's care was even more attenuated than Nurse Andrews' involvement. Dkt. Nos. 146 at 11–12, 159 at 8–9. Further, Defendants note that although Ms. Glasgow was Ms. Andrews' direct supervisor, she maintained no direct supervisory control over Nurse Robinson, who allegedly committed the constitutional violation. *Id.* As such, they argue that she cannot be held liable as a supervisor if the individual claim against Ms. Andrews is dismissed because there is no nexus between Nurse Robinson's actions and Ms. Glasgow's knowledge of or involvement in Ms. Jefferson's care. *Id.*

In response, Plaintiffs assert that Ms. Glasgow is liable because she hired Ms. Andrews as the Nursing Supervisor even though Ms. Andrews was once disciplined by the State of Washington Board of Nursing more than 35 years ago. Dkt. No. 159 at 30. Essentially, Plaintiffs appear to be arguing that because Ms. Glasgow knew of Ms. Andrews' three-decade old

---

[16] The Court notes that claims raised as to the policymaking capacity of an individual defendant go only toward establishing municipal liable under § 1983 and *Monell*. *C.f. Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 406–07 (1997) (concluding that without establishing policymaker liability, a claim "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably" (emphasis original)).

licensing infraction when she made the hiring decision, Ms. Glasgow somehow set into motion a chain of events that led to Ms. Jefferson's death. *See* Dkt. No. 155 at 30–32. The extremely attenuated nature of this argument holds no water, especially since Plaintiffs do not even attempt to support their individual § 1983 claim against Ms. Andrews. *See supra* § III.D.2.a.

Plaintiffs fail to raise a dispute of fact as to whether Ms. Glasgow, as Ms. Andrews' supervisor, had any involvement in or knowledge of any of the alleged constitutional violations they claim caused Ms. Jefferson's death. The Court therefore GRANTS the NWRC Individual Defendants request for summary judgment as to the § 1983 claim against Kristine Glasgow in her personal supervisory capacity and DISMISSES Ms. Glasgow as an individual defendant in this case.[17]

For the reasons stated in Sections III.D.1–2., the Court GRANTS IN PART and DENIES IN PART the NWRC Individual Defendants' motion for summary judgment at Dkt. No. 146.

### E.    Whatcom Defendants' Motion for Partial Summary Judgment (Dkt. No. 134)

The Whatcom Defendants move to dismiss on summary judgment only the federal claims raised against them in the Amended Complaint, Dkt. No. 134 at 2, including (1) disability discrimination under the ADA and RA; (2) municipal liability under § 1983 and *Monell* against Whatcom County; (3) individual supervisor liability under § 1983 against the Whatcom Supervisors and Dr. Andrews; and (4) individual § 1983 liability for the Whatcom Deputies in their personal capacities.[18] *See* Dkt. No. 82 at ¶¶ 168–182, 193–216. They also request dismissal of any claims for punitive damages. Dkt. No. 134 at 25.

---

[17] *See supra* n.16.

[18] The Whatcom Defendants do not move for summary judgment on any of the state law tort claims Plaintiffs raise, but instead ask the Court to decline supplemental jurisdiction over those claims and remand them to state court if all of the federal claims are dismissed on summary judgment. Dkt. No. 134 at 2. Because some of Plaintiffs' federal claims against the Whatcom Defendants survive summary judgment, the Court will not consider Defendants' request for remand.

### 1.    Municipal Liability under § 1983 and *Monell*

Whatcom County can be held directly liability under § 1983 only for actions attributable to the county. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (citing *Monell*, 436 U.S. at 690). To establish municipal liability, Plaintiffs must prove the existence of an unconstitutional government policy or custom that caused the alleged deprivation of rights. *Id.*; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). A county cannot be held liable simply because an employee or agent violated § 1983; it can be "held liable *only* for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403–04 (emphasis added) (citing *Monell*, 436 U.S. at 694). Thus, Plaintiffs must establish the existence of an officially ratified policy or an unofficial custom by (1) "[s]howing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity . . . . [(2)] showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision . . . [or (3)] showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002) (internal quotations and citations omitted). Finally, Plaintiffs can also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to adequately train municipal employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Failure-to-train liability arises only if (1) the training program is inadequate "in relation to the tasks the particular [employees] must perform"; (2) local officials were deliberately indifferent "to the rights of persons with whom the [local officials] come into contact"; and (3) the inadequacy of the training "must be shown to have

1   'actually caused' the constitutional deprivation at issue." *Merritt v. Cnty. of Los Angeles*, 875

2   F.2d 765, 770 (9th Cir. 1989) (internal quotations and citations omitted).

3          Defendants argue that Plaintiffs cannot present any evidence of a longstanding

4   unconstitutional policy or custom. Dkt. No. 134 at 22. They argue that the County has

5   implemented and maintained constitutionally adequate medical treatment policies at the jail that

6   are accredited by the National Commission on Correctional Health Care, and the historical

7   evidence shows no pattern of constitutional deprivations because of inadequate medical

8   treatment under these policies. *Id.* Defendants also argue that none of the Whatcom Supervisors

9   had any direct involvement in any of the events leading to Ms. Jefferson's death. Dkt. No. 134

10  at 19–20. The NWRC Individual Defendants make similar arguments about Ms. Andrews and

11  Ms. Glasgow. Dkt. No. 146 at 14–15. The NWRC Individual Defendants do not appear to

12  challenge Plaintiffs' representation of Ms. Andrews or Ms. Glasgow as Whatcom County

13  policymakers. The Court notes that "whether an official had final policymaking authority is a

14  question of state law" that must be established before municipal liability can be implied.

15  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

16          Plaintiffs point to multiple official policies they challenge as constitutionally inadequate,

17  as well as to evidence they argue shows a longstanding practice among jail staff of deviating

18  from the official policies in ways that caused the alleged deprivation of Ms. Jefferson's rights.

19  Dkt. No. 155 at 21–27; *see also* Dkt. No. 112-71. Plaintiffs also offer evidence of other inmates

20  who have died while in custody, allegedly after receiving inadequate medical care at the jail due

21  to similar policies and practices. Dkt. Nos. 155 at 1, 156-2 at 31–33. Plaintiffs argue that this

22  evidence shows a pattern of systemic indifference attributable to Whatcom County. Dkt. No. 155

23  at 2. Plaintiffs note that all of the Whatcom Supervisors, as well as Dr. Andrews, Ms. Andrews,

24  and Ms. Glasgow, appear to have some responsibility to develop, maintain, promulgate, and/or

implement jail policies and have allegedly acquiesced or ratified the unconstitutional practices of

jail staff. Dkt. No. 155 at 28–32. Finally, Plaintiffs argue that several of the jail employees who

interacted with Ms. Jefferson were inadequately trained on the proper implementation of the

medical procedures, which contributed to Ms. Jefferson's death. *Id.* at 22–23.

The Court finds that there are sufficient disputes of material fact as to whether Whatcom

County can be held liable on Plaintiffs' claim for municipal liability under § 1983 and *Monell*.

The Court therefore DENIES the Whatcom Defendants' request for summary judgment on this

claim.

### 2.  Individual Liability under § 1983 for the Whatcom Defendants

Plaintiffs raise individual § 1983 claims against each of the nine Whatcom Deputies in

their personal capacities, and against Dr. Andrews and the Whatcom Supervisors in their

capacities as supervisors of jail-staff Defendants. Dkt. No. 82 ¶¶ 10–13, 16–26, 30, 193–202.

Defendants assert that summary judgment is appropriate for all of Plaintiffs' individual § 1983

claims because all of the Whatcom Deputies are entitled to qualified immunity[19] (Dkt. No. 134

---

[19] Plaintiffs highlight that Defendants failed to raise qualified immunity as a ground for granting summary judgment on the § 1983 claims against Dr. Andrews or the Whatcom Supervisors. Dkt. No. 155 at 18. In reply, Defendants do not address this assertion for the Whatcom Supervisors but argue that Dr. Andrews is entitled to summary judgment on qualified immunity grounds. Dkt. No. 157 at 9–10. While the Whatcom Defendants affirmatively moved for summary judgment on the qualified immunity issue with regard to the individual deputies, they did not do so for Dr. Andrews. Rather, in their reply, Defendants point to Plaintiffs' motion for partial summary judgment—regarding whether Dr. Andrews is categorically barred from asserting the qualified immunity defense (Dkt. No. 131 at 18)—and appear to argue that their opposition to that motion supports a claim that Dr. Andrews is entitled to qualified immunity here. *Id.* at 9, n.4 (citing Dkt. No. 148). The question of whether qualified immunity is categorically available to certain parties is distinct from the question of whether it applies in a specific case. *See supra* § III.D.1.a.; *see also Jensen*, 222 F.3d at 576 *(citing Richardson*, 521 U.S. at 399). Plaintiffs' motion for partial summary judgment addresses only the former (*see* Dkt. No. 131 at 18), which the Court previously discussed. *See supra* § III.A.2. As a general rule, it is inappropriate for a court to consider arguments raised for the first time in a reply brief. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."). Additionally, the qualified immunity determination requires a "particularized analysis," *Jensen*, 222 F.3d at 576, that has not been sufficiently briefed as to Dr. Andrews. Thus, the Court will not reach the issue of whether Dr. Andrews is entitled to qualified immunity.

at 10–17) and because Plaintiffs fail to raise a genuine dispute of fact as to liability for any of the individual defendants sued in their supervisory capacity. Dkt. No. 134.

### a) Supervisor Liability Under § 1983

As previously noted, a supervisor's liability "exists [because of] either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207. What matters are the supervisors' own actions or inaction in bringing about the alleged violation, or the supervisors' knowledge of and failure to prevent a subordinate's violation. *Id.* at 1207–128.

### (1) Supervisor Liability for Bill Elfo, Wendy Jones, and Caleb Erickson

Defendants argue that none of the Whatcom Supervisors had any knowledge of any of the specific actions taken or decisions made by jail staff that Plaintiffs' claim attributed to Ms. Jefferson's death. Dkt. No. 134 at 18–20. In fact, it appears that none of the Whatcom Supervisors became aware of the details leading to Ms. Jefferson's death until well after it occurred. *Id.* Plaintiffs do not dispute that none of these named supervisors had any involvement in or knowledge of the care Ms. Jefferson received while in custody. All of Plaintiffs' arguments about the Whatcom Supervisors appear to go toward establishing municipal liability against the County because of their status as policymakers.[20] *See* Dkt. No. 155 at 28–29.

The Court therefore GRANTS the Whatcom Defendants' request for summary judgment and DISMISSES the individual § 1983 claims raised against Bill Elfo, Wendy Jones, and Caleb Erickson.

---

[20] *See supra* § III.E.1. for the Court's discussion of municipal liability.

1

(2)    Supervisor Liability for Dr. Andrews

2

Defendants argue that the only Whatcom Defendant sued in a supervisory capacity who

3

had any direct involvement in or knowledge of Ms. Jefferson's care while she was in custody

4

was Dr. Andrews. Dkt. No. 134 at 18–20. Dr. Andrews' involvement included being briefed over

5

the phone by Nurse Robinson regarding Ms. Jefferson's condition on the morning of August 10

6

and prescribing Ativan to treat her withdrawal symptoms. *Id.* at 18.

7

As to Dr. Andrews, Plaintiffs have presented evidence from which a jury could find that

8

his own actions or inaction related to the care provided to Ms. Jefferson and the directions he

9

gave Nurse Robinson were sufficiently unreasonable, and therefore, to establish his objective

10

deliberate indifference to the risk that Ms. Jefferson would receive constitutionally inadequate

11

care. Dkt. No. 155 at 16–18. The Court therefore DENIES the Whatcom Defendants' request for

12

summary judgment as to the individual § 1983 claim raised against Dr. Stuart Andrews.

13

**3.    Individual Liability for the Whatcom Deputies under § 1983**

14

Defendants move to dismiss the individual § 1983 claims against each of the nine

15

individually named Whatcom Deputies on qualified immunity grounds. Dkt. No. 134 at 13–17.

16

Plaintiffs assert that Ms. Jefferson had a Fourteenth Amendment right to adequate medical care

17

while in pretrial custody. Dkt. No. 155 at 3. Defendants do not appear to dispute that Ms.

18

Jefferson's right to adequate care was clearly established at the time. *See* Dkt. No. 134 at 8–10.

19

In any event, the Court has already concluded as much. *See supra* § III.D.1.a.(2). Thus,

20

Defendant's summary judgment motion as to the Whatcom Deputies turns on whether Plaintiffs

21

have asserted a violation of Ms. Jefferson's right to adequate medical care while in custody.

22

23

24

The Court has previously discussed the applicable standard.[21] *Id.* Because of the particularized nature of the qualified immunity analysis, Plaintiffs must establish that "the violative nature of *particular* conduct is clearly established" for each of the individual Whatcom Deputies. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis original) (internal quotations omitted)*; see also Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).

### a)   *Deputies Cardinal, Hindman, and Brown*

In footnotes in their response in opposition to the Whatcom Defendants' motion, Plaintiffs voluntarily dismiss these individual defendants in their "personal capacities." Dkt. No. 155 at 2, n.3–5. Whatcom Defendants moved only to dismiss the individual § 1983 claims against these defendants on qualified immunity grounds. Dkt. No. 134 at 13–14. That said, the Court understands Plaintiffs' "personal capacity" dismissal to include all individual claims against these Defendants, including the state law tort claims.

Pursuant to Fed. R. Civ. P. 41(a)(2), the Court DISMISSES Cheryl Cardinal, Jeffery Hindman, and Miriah Brown as individual defendants in this case.

### b)   *Deputy Kiele*

Defendants argue that the evidence shows that Deputy Kiele was not "deliberately indifferent to Ms. Jefferson's medical needs" and is therefore entitled to qualified immunity. Dkt. No. 134 at 16. Plaintiffs do not appear to oppose Defendants' arguments about Deputy Kiele. The Court considers Defendants' unopposed assertions regarding Deputy Kiele as undisputed. *See* Fed. R. Civ. Proc. 56(e)(2).

---

[21] The Parties' briefing includes some discussion as to whether an objective or subjective standard applies. *See* Dkt. Nos. 134 at 9–10, 155 at 4–5. The correct standard to apply is a question of law, and the Court has concluded that an objective deliberate indifference standard applies. In reviewing the Parties' briefing, the Court finds that the issue has been sufficiently addressed to allow the Court to apply the correct standard.

1    Based on the undisputed facts, the Court therefore GRANTS the Whatcom Defendants'

2    request for summary judgment as to the individual § 1983 claim against Deputy Kiele.

3              c)         *Deputies Turner, McDonald, Charroin, Ignashova, and Farmer*

4    Defendants argue that the evidence of limited interactions between these deputies and

5    Ms. Jefferson fails to establish the objective deliberate indifference standard as a matter of law,

6    so each one is therefore entitled to qualified immunity. Dkt. No. 134 at 14–17. In response,

7    Plaintiffs point to specific facts in the record on which a jury could decide that each individual

8    defendant acted objectively unreasonably in response to Ms. Jefferson's known medical

9    condition, which directly contributed to her death. Dkt. No. 155 at 5–11. In reply, Defendants

10   argue that Plaintiffs cherry-pick evidence and misconstrue events to make it seem like the

11   deputies' actions rises to the level of showing objective deliberate indifference. Dkt. No. 157

12   at 3–8. They argue that no fact finder could find objective deliberate indifference upon a

13   comprehensive review of all the facts. *Id.*

14   At this stage, the Court neither makes credibility determinations nor weighs the evidence

15   but just determines "whether the evidence presents a sufficient disagreement to require

16   submission to a jury." *Anderson*, 477 U.S. at 251–52. Further, the Court must resolve all

17   reasonable inferences in favor of the nonmoving party. *Id.* at 255. Plaintiffs have raised a

18   genuine dispute of fact as to whether these deputies can maintain their qualified immunity

19   defense. The Court therefore DENIES the Whatcom Defendants' request for summary judgment as

20   to the individual § 1983 claims against Matt Turner, Jason McDonald, Matthew Charroin, Violet

21   Ignashova, and Joshua Farmer.

22        **4.       Disability Discrimination under the ADA and RA**

23   Both the ADA and the RA prohibit disability discrimination in the correctional setting.

24   *See, e.g*, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (state prisoner ADA claim

1   allowed); *Armstrong v. Wilson*, 124 F.3d 1019, 1022 (9th Cir. 1997) (state prisoner ADA and RA

2   claims allowed). Although there are some differences for when the two statues apply, the

3   elements for establishing liability are essentially the same: plaintiffs asserting claims must show

4   (1) that they are disabled and (2) otherwise qualified, as defined by the relevant statute, and

5   (3) were excluded from participation in or denied the benefits of a service, program, or activity,

6   or otherwise discriminated against (4) because of their disability. *Duffy v. Riveland*, 98 F.3d 447,

7   455 (9th Cir. 1996). To recover monetary damages under Title II of the ADA or the RA, a

8   plaintiff must prove intentional discrimination on the part of the defendant. *Duvall v. Cnty. of*

9   *Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g en banc* (Oct. 11,

10  2001). The Ninth Circuit applies a deliberate indifference standard to determine intentional

11  discrimination. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally

12  protected right is substantially likely, and a failure to act upon that [] likelihood." *Id.* at 1139.

13      The Whatcom Defendants argue that Ms. Jefferson never requested any specific

14  accommodations for her disability that the County was required to provide under either the ADA

15  or the RA. Dkt. No. 134 at 24. Defendants also argue there is no evidence of anyone deliberately

16  discriminating against Ms. Jefferson because of her disability. *Id.* at 25. In response, Plaintiffs

17  note that the deliberate indifference standard also applies to many of Plaintiffs' § 1983 claims

18  against the Whatcom Defendants, including their claim that many of the individual defendants

19  were inadequately trained to provide necessary medical care to inmates suffering from

20  withdrawal. Dkt. No. 155 at 34–35.

21      The Court has already determined that genuine disputes of fact preclude summary

22  judgment dismissal of Plaintiffs' failure-to-train claim for municipal liability against Whatcom

23  County. *See supra* § III.E.1. If a jury were to determine that the County was deliberately

24  indifferent in failing to train its employees to provide adequate medical care to inmates suffering

from withdrawal, the same jury could reasonably infer that the deliberate indifference was because of the inmates' disabilities (addiction). Thus, the Court must DENY the Whatcom Defendants' request for summary judgment on Plaintiffs' ADA and RA claims.

### 5.    Punitive Damages

Punitive damages may be assessed in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants argue that "even accepting plaintiffs' version of events" there is no evidence of conduct that meets this standard. Dkt. No. 25. Plaintiffs respond that a jury could find that a successful showing of deliberate indifference on any of their claims also meets this standard. Dkt. No. 155 at 35. The determination of whether punitive damages should be awarded is "within the exclusive province of the jury" *Runge v. Lee*, 441 F.2d 579, 584 (9th Cir. 1971). The Court therefore DENIES the Whatcom Defendants' request for summary judgment as to Plaintiffs' claims for punitive damages.

For the reasons stated in Sections III.E.1–5., the Court GRANTS IN PART and DENIES IN PART the Whatcom Defendants' motion for summary judgment at Dkt. No. 134.

### F.    Fictitious Defendants

In their Amended Complaint, Plaintiffs include claims against a number of fictitious "Doe" Defendants who have never been identified or served in this action. *See* Dkt. No. 82. While naming fictious defendants is generally disfavored in federal court, "plaintiff[s] should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). This case has been pending for more than two years, and the deadlines to amend pleadings and complete discovery have both

long passed. *See* Dkt. No. 69. Additionally, Federal Rule of Civil Procedure 4(m) allows the Court to dismiss defendants who are not timely served *sua sponte* upon notice to the plaintiff. The Court further notes that none of the Parties address the unspecified fictitious Defendants in any of their respective motions for summary judgment.

Plaintiffs are therefore directed to file a stipulated notice voluntarily dismissing all unnamed Doe Defendants pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) within **fourteen (14) days** of the date of this Order. Alternatively, if Plaintiffs intend to proceed with any of their claims against any of the Doe Defendants, they must move for leave to amend their complaint to identify any unnamed defendants and for relief from the service deadline within **fourteen (14) days** of the date of this Order. Otherwise, pursuant to Rule 4(m), the Court will *sua sponte* order the dismissal of all claims against all Doe Defendants.

### IV.    CONCLUSION AND ORDER

For the reasons outlined above, the Court ORDERS:

1. PeaceHealth's motion for summary judgment at Dkt. No. 104 is GRANTED, and all claims against Defendant PeaceHealth are DISMISSED.

2. Plaintiffs' partial motion for summary judgment at Dkt. No. 109 is GRANTED IN PART and DENIED IN PART.

3. Plaintiffs' partial motion for summary judgment at Dkt. No. 131 is GRANTED IN PART and DENIED IN PART, and all state law tort claims against the NWRC Individual Defendants are voluntarily DISMISSED per Fed. R. Civ. P. 41(a)(2).

4. The Whatcom Defendants' motion for summary judgment at Dkt. No. 134 is GRANTED IN PART and DENIED IN PART, and the following individual defendants are DISMISSED entirely: Cheryl Cardinal, Jeffery Hindman, and Miriah Brown.

5. The NWRC Individual Defendants' motion for summary judgment at Dkt. No. 146 is GRANTED IN PART and DENIED IN PART, and individual defendants Sally Andrews and Kristine Glasgow are DISMISSED entirely.

6. Within **fourteen (14) days** of the date of this Order, Plaintiffs shall either file a stipulated notice voluntarily dismissing all unnamed Doe Defendants or move for leave to amend their complaint to identify any unnamed defendants and for relief from the service deadline. Otherwise, the Court will *sua sponte* order the dismissal of all claims against all Doe Defendants.

Dated this 11th day of January 2023.

Tana Lin
United States District Judge